UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIONEL BRIGGS *and* JAMES ANTWINE,
individually and in behalf of all other persons
similarly situated,

                              Plaintiffs,

       v.

DPV TRANSPORTATION, INC., DPV
TRANSPORTATION WORLDWIDE LLC,
DANIEL PEREZ, *and* JOSE PEREZ, jointly
and severally,

                              Defendants.

No. 21-CV-6738 (KMK)

OPINION & ORDER

Appearances:

John Gurrieri, Esq.
Law Office of Justin A. Zellner
New York, NY
*Counsel for Plaintiffs*

Scott Matthews, Esq.
Windels, Marx, Lane & Mittendorf, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Lionel Briggs ("Briggs") and James Antwine ("Antwine") (together, "Plaintiffs"),

brought this putative class action against their former employer, DPV Transportation, Inc. and

DPV Transportation Worldwide LLC (together, "DPV"), and two managers of DPV, Daniel

Perez and Jose Perez (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of

1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.; the New York Minimum Wage Act, N.Y. Lab. Law

§§ 650, et seq.; Section 191 of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 191; and

the New York Wage Theft Prevention Act, N.Y. LAB. LAW §§ 195, 198.  (*See generally* Compl.

(Dkt. No. 1).)  The Parties now seek approval of their proposed settlement.  (*See* Letter from

John M. Gurrieri, Esq., to Court (Nov. 8, 2021) ("Gurrieri Letter") (Dkt. No. 24); Gurrieri Letter

Ex. 1 (Settlement Agreement and Limited Release) ("Proposed Settlement Agreement" or

"PSA") (Dkt. No. 24-1); Gurrieri Letter Ex. 2 (Time Sheet) ("Time Sheet") (Dkt. No. 24-2);

Gurrieri Letter Ex. 3 (Case Costs) ("Costs Sheet") (Dkt. No. 24-3).)  For the reasons that follow,

the Parties' application is denied without prejudice.

I.  Background

A.  Factual Background

Plaintiffs worked for Defendants as drivers, assisting in providing COVID-19 vaccines in

New York state from approximately May to July 2021.  (Compl. ¶¶ 14, 27, 28; Gurrieri Letter 1.)

Plaintiffs worked over 40 hours each week and allege that they were not paid overtime.  (Compl.

¶¶ 29, 32; Gurrieri Letter 1.)  Briggs specifically alleges that he worked approximately 170 hours

every two weeks—for example, Briggs worked 178 hours during the work period from May 17,

2021 to May 30, 2021—but he was paid only his hourly wages, which were approximately $15

per hour in his first week of work for Defendants and $25 per hour thereafter.  (Compl. ¶¶ 29, 30,

32.)  Plaintiffs also allege that Defendants failed to provide them with either a notice and

acknowledgement at the time of hiring or a statement with each payment of wages, as required

under the NYLL, and "failed to post or keep posted notices explaining the minimum wage rights

of employees under the [FLSA] and the [NYLL]."  (*Id.* ¶¶ 33, 34, 35; Gurrieri Letter 1.)

Plaintiffs sought "a declaratory judgment that the practices complained of herein are

unlawful under the [FLSA], the Minimum Wage Act, [§] 191 of the [NYLL], and the Wage

Theft Prevention Act" and a permanent injunction restraining Defendants from violating the

NYLL, in addition to, inter alia, "an award of unpaid or underpaid overtime compensation," "an award of liquidated damages," "an award of statutory damages," "an award of prejudgment interest," and "an award of attorney's fees, costs, and further expenses." (Compl. 11–13.) Plaintiffs purported to bring their claims individually and on behalf of a class of similarly situated current and former employees employed by Defendants as drivers who assisted in providing COVID-19 vaccines in New York state in the last three years (the "FLSA Collective Action") or six years (the "New York Class"). (*Id.* ¶¶ 12, 14.)

### B.  Procedural History

Briggs filed the Complaint on August 10, 2021.  (Dkt. No. 1.)  On September 22, 2021, Antwine consented to becoming a party plaintiff pursuant to 29 U.S.C. § 216(b).  (Dkt. No. 17.) On October 12, 2021, Defendants filed an Answer.  (Dkt. No. 19.)  On October 25, 2021, the Parties informed the Court that the Parties had reached a settlement in principle, (Dkt. No. 21), and on November 8, 2021, Plaintiffs submitted to the Court the Proposed Settlement Agreement, which they requested that the Court approve, (*see* Gurrieri Letter).[1]

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  FED. R. CIV. P. 41(a)(1)(A).  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  FED. R. CIV. P.

---

[1] Plaintiffs initially filed the letter and accompanying papers on November 8, 2021, but were notified by the Clerk of Court on November 22, 2021 that the papers were filed using the wrong ECF event.  (*See* Dkt.)  Plaintiffs re-filed the letter and accompanying papers on November 23, 2021.  (*See* Dkt. No. 24.)

41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable,'" to obtain approval and dismissal. *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *accord Picorelli v. Watermark Contractors Inc.*, No. 21-CV-2433, 2021 WL 4973612, at *2 (S.D.N.Y. Oct. 26, 2021) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Tapia v. Lira*, No. 18-CV-10771, 2021 WL 5086300, at *2 (S.D.N.Y. Nov. 2, 2021) (quotation marks omitted); *accord Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, __ F. Supp. 3d __, 2021 WL 1885697, at *2 (S.D.N.Y. May 11, 2021) (same); *Kassman v. KPMG LLP*, No. 11-CV-3743, 2021 WL 1393296, at *3 (S.D.N.Y. Apr. 12, 2021) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *accord Ochoa v. Prince Deli Grocery Corp.*, No. 18-CV-9417, 2021 WL 5235222, at

*1 (S.D.N.Y. Nov. 8, 2021) (same); *Picorelli*, 2021 WL 4973612, at *2 (same); *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2021 WL 1964724, at *3 (S.D.N.Y. May 17, 2021) (same).  Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) the likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *Picorelli*, 2021 WL 4973612, at *2 (same); *Perez*, 2021 WL 1964724, at *3 (same).

"Courts may reject a proposed FLSA settlement where the parties do not provide the basis for the recovery figure or documentation supporting the reasonableness of the attorneys' fees, or if the settlement agreement includes impermissible provisions such as restrictive confidentiality clauses or overbroad releases."  *Ochoa*, 2021 WL 5235222, at *1 (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176–82 (S.D.N.Y. 2015)).

> Examination of whether a proposed FLSA settlement is fair and reasonable is thus an information intensive undertaking.  The Court requires evidence as to the nature of [P]laintiffs' claims, the bona fides of the litigation and negotiation process, [Defendants'] potential exposure both to [P]laintiffs and to any putative class, the calculations underlying estimations of [P]laintiffs' total recovery, the probability of [P]laintiffs' success on the merits, and the basis for any requested fee award.

*Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (italics omitted); *see also Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) ("In order to evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate the bona fides of the dispute." (quotation marks omitted)).

B.  Analysis

1.  Whether the Settlement Amount Is Fair and Reasonable

Under the PSA, Defendants agree to pay a total of $26,000.00 (the "Settlement Amount") to resolve Plaintiffs' claims.  (PSA ¶ 1.)  Of the Settlement Amount, $8,770.17 will be paid to Antwine, $8,113.83 will be paid to Briggs, and $9,116.00 will be paid to Plaintiffs' counsel for fees and costs.  (*Id.*)

The Court does not have sufficient information to determine whether the settlement sum is fair and reasonable.  In the Gurrieri Letter, Plaintiffs represent that Antwine "is owed $3,530.00 in unpaid overtime, $3,530.00 in liquidated damages, and an additional $6,195.00 in statutory damages for violation of the Wage Theft Prevention Act," for a total of $13,255. (Gurrieri Letter 1.)  Plaintiffs represent that Briggs "is owed $2,956.25 in unpaid overtime, $2,956.25 in liquidated damages, and an additional $7,050.00 in statutory damages for violation of the Wage Theft Prevention Act," for a total of $12,962.50.  (*Id.*)  However, Plaintiffs provide no explanation of the methodology used to calculate these amounts or the underlying data (i.e., the hours each Plaintiff worked), nor do Plaintiffs offer an explanation for how the Parties arrived at the Settlement Amount, given that Antwine and Briggs will recover $4,484.83 and $4,848.67 less, respectively, than what they are allegedly owed.  The Parties must submit to the Court a more detailed explanation of how they arrived at the recovery sums for each Plaintiff before the Court will approve the PSA.  *See Picorelli*, 2021 WL 4973612, at *3 ("[T]he [c]ourt will not approve the PSA without additional information regarding the underlying data and

6

methodology that were used to generate the Settlement Amount." (quoting *Perez*, 2021 WL 1964724, at *4)).[2]

### 2. Good Faith

The Court is satisfied that the PSA was negotiated competently, in good faith, and at arm's length, and that there was no fraud or collusion.  (*See* Gurrieri Letter 3 ("[T]his agreement

---

[2] The Court notes that the Settlement Amount does, on its face, appear to be generous. The amounts that Antwine and Briggs will recover under the terms of the PSA represent approximately 66% and 63%, respectively, of Plaintiffs' estimations of their potential recoveries. Thus, the Settlement Amount is clearly a "substantial proportion of the maximum potential recovery," *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (citation omitted); indeed, the Settlement Amount is a considerably larger proportion than those which other courts have found fair and reasonable, *cf. id.* (finding a proposed settlement amount of approximately 31% of the plaintiffs' calculation of the total potential recovery to be fair and reasonable); *Beckert v. Roniribunov*, No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding a proposed settlement amount of approximately 25% of the estimated maximum possible recovery to be fair and reasonable). Moreover, the Parties have represented that a "bona fide dispute exists with respect to wages owed and whether Plaintiffs could prove entitlement to liquidated and statutory damages," (Gurrieri Letter 2 (italics omitted)), which also militates in favor of approval, as settlement avoids the expense, burden, and risk associated with going to trial, *cf. Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving settlement amount representing 26% of potential damages where there were "various bona fide disputes between the parties," including "whether the evidence would support a claim for either unpaid tips or improper deductions" (underline omitted)).  However, "[e]xamination of whether a proposed FLSA settlement is fair and reasonable is . . . an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and the Court cannot find the Settlement Amount to be reasonable based on these bottom-line comparisons alone, *see Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789265, at *3 (S.D.N.Y. Apr. 23, 2021) (declining to approve settlement amount of approximately 110% of the estimated maximum potential recovery where "there is no explanation for the additional $1,246.04 for the total . . . to be paid to [the] [p]laintiff under the [p]roposed [s]ettlement"); *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 3, 2020) (declining to approve settlement amount of approximately 118% of the estimated maximum potential recovery because the plaintiff "d[id] not provide an explanation of the methodology used to calculate [the settlement] amount, or the underlying data"); *see also Nights of Cabiria*, 96 F. Supp. 3d at 176–77 (explaining that while "[i]t may be that the proposed settlement would merit approval in light of a more complete record," the court could not approve the settlement where the parties did not provide the court "with each party's estimate of the number of hours worked or the applicable wage" (quotation marks omitted)).

was reached by arm[']s-length negotiation by experienced employment attorneys, as both Plaintiff[s'] counsel and Defense counsel routinely handle employment cases, including those brought under the FLSA.").) *See Picorelli*, 2021 WL 4973612, at *4.

### 3.  Similarly Situated Plaintiffs

The Court is not aware of other employees who are similarly situated to Plaintiffs, and Plaintiffs will be the only two employees affected by the settlement and dismissal of the lawsuit. These facts weigh in factor of approval of the PSA. *See, e.g.*, *Cronk*, 2021 WL 1885697, at *9 (noting that no other employee came forward and that the plaintiff "will . . . be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6818, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (same).

### 4.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2067, 2021 WL 5280954, at *2 (S.D.N.Y. Nov. 12, 2021) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (quoting *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123, 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016))); *Rubio v. BSDB Mgmt., Inc.*, __ F. Supp. 3d __, 2021 WL 3631122, at *4 (S.D.N.Y. July 8, 2021) (denying request for approval of proposed settlement agreement after finding that "[t]he release provisions at issue are plainly overbroad as they

require [the] [p]laintiff to waive a broad set of claims that goes far beyond wage-and-hour issues or the claims at issue in this lawsuit").

Here, the PSA provides, "Plaintiffs . . . freely and irrevocably relinquish, release, and waive all possible charges, complaints, causes of action, liabilities, obligations, demands, contract rights, and claims against each of the Defendants . . . based on or arising out of any acts, omissions, conduct, thing[,] or matter from the beginning of time up to and including the date the District Court dismisses the Action with prejudice, (a) relating to or arising out of wages, hours, overtime, prevailing wages, or wage deductions, (b) arising under or for alleged violation of the [FLSA] and/or the [NYLL], Federal and New York State labor regulations of any kind, and arising under [the] New York Wage Theft Prevention Act[,] (c) arising under any actual or allege[d] express or implied contract, or under any common law or for any tort, in regard to work hours overtime, and/or payment of wages." (PSA ¶ 4.) The PSA also specifies that "[t]his waiver and release includes all claims described above either presently known or unknown by Plaintiffs." (*Id.*)

The Court finds that this waiver is overly broad. As explained above, courts in this District are clear that "any release provision must be limited to the claims at issue in this action." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015). Because the FLSA and NYLL govern more than just wage-and-hour claims, the inclusion of "arising under or for alleged violation of the [FLSA] and/or the [NYLL], Federal and New York State labor regulations of any kind, and arising under [the] New York Wage Theft Prevention Act," (PSA ¶ 4), is overbroad, because the release as written could extinguish claims under provisions of the FLSA or NYLL "that have no relationship whatsoever" to the claims at issue in this case. *Cheeks*, 796 F.3d at 206–07 (quotation marks omitted); *see also Shah*, 2021

WL 2789265, at *4 (finding release provision to be overbroad because "[w]hile the [r]elease includes causes of action under the FLSA and NYLL, it is not expressly limited to the conduct in this case"); *Velazquez Cuautle v. Hudson Market 303 LLC*, No. 18-CV-2968, 2019 WL 4855600, at *2 (S.D.N.Y. Sept. 5, 2019) (finding release provision to be overbroad because "[r]eleases may not include claims that have no relationship whatsoever to wage-and-hour issues," and "[h]ere, [the] [p]laintiffs are asked to . . . release FLSA claims that have no relation to the FLSA issues in this case" (quotation marks omitted)); *Rojas*, 2018 WL 4931540, at *3 (finding release of "any and all FLSA claims and NYLL claims of any kind or nature, whether known or unknown" to be overbroad, explaining that "[a]lthough a release may include claims not presented and even those which could not be presented, it must still be limited to conduct that arises out of the identical factual predicate as the settled conduct" (alteration and quotation marks omitted)).

### 5.  Attorneys' Fees

"Under the FLSA and the NYLL, a prevailing plaintiff"—including one who settles—"is entitled to reasonable attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing, inter alia, 29 U.S.C. § 216(b), N.Y. LAW § 663(1)); *see also id.* at 600–01 (listing "settlements incorporating attorneys' fees and costs into the settlement amount" as a context in which "[a]ttorneys' fees and costs in FLSA actions generally arise"). Courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiff. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *accord Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (summary order) (district courts are "free to pick and choose

between the lodestar and percentage methods in determining a reasonable attorney's fee"
(quotation marks omitted)).  But even where attorneys' fees are sought pursuant to the
percentage method, "counsel must submit evidence providing a factual basis for the award."
*Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635,
2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for
the fee award, typically with contemporaneous time records.").  A proper fee request thus
includes "contemporaneous billing records documents, for each attorney, the date, the hours
expended, and the nature of the work done."  *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotation
marks omitted).  The Court must also determine the reasonable hourly rate by considering the
"'prevailing market rate,' i.e., the rate 'prevailing in the relevant community for similar services
by lawyers of reasonably comparable skill, experience, and reputation.'"  *M.H. v. N.Y.C. Dep't of
Educ.*, No. 20-CV-1923, 2021 WL 4804031, at *12 (S.D.N.Y. Oct. 13, 2021) (alteration omitted)
(quoting *Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005)).

Here, Plaintiffs' counsel seeks an award of $9,116, which amounts to approximately one-
third of the settlement plus $536 in costs.  (*See* PSA ¶ 1; Gurrieri Letter 5.)  "Courts in the
Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total
recovery."  *Zekanovic*, 2020 WL 5894603, at *6 (collecting cases); *see also Robles v. Luis
Furniture No. 1 Inc.*, No. 20-CV-6951, 2021 WL 4974677, at *2 (S.D.N.Y. Oct. 26, 2021)
("Courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."
(citation omitted)).  "However, 'significantly smaller awards are also common where warranted
by the facts of a particular case'; for example, when 'settlement has been reached in a relatively
short period of time, with little, if any, discovery or motion practice.'"  *Zekanovic*, 2020 WL

11

5894603, at *6 (quoting *Guzman v. Joesons Auto Parts.*, No. 11-CV-4543, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013)).

Plaintiffs' counsel has submitted records of their time to substantiate their attorneys' fees request, (*see* Time Sheet), which Plaintiffs' counsel represents are contemporaneous, (*see* Gurrieri Letter 5). Two attorneys worked on this case: Justin Zellner and John Gurrieri. (*See id.* at 3.) The Time Sheet demonstrates that Zellner spent 6.2 total hours on this case, and Gurrieri spent 9 hours. (*See* Time Sheet.) At Zellner's billing rate of $400/hour and Gurrieri's billing rate of $300/hour—rates which the Court finds to be reasonable based on the substantiation provided by Plaintiffs' counsel, (*see* Gurrieri Letter 4)—the Time Sheet supports a lodestar of $5,180, (*see* Time Sheet).[3] Plaintiffs' counsel has also submitted records of their costs, which demonstrate that Plaintiffs' counsel spent $536, on filing fees and a process server. (*See* Costs Sheet.) The total fees lodestar plus costs thus comes to a total of $5,716. The total attorneys' fees and costs award requested by Plaintiffs' counsel then incorporates a multiplier of approximately 1.59 (even after accounting for the arithmetic error identified in Note 3), which Plaintiffs' counsel argues is reasonable because this lodestar multiplier is "well within the range found to be fair in this Circuit." (Gurreri Letter 6 (collecting cases).)

"When analyzing a multiplier, the Court should consider factors such as the attorney time expended, the complexity of the case, and the quality of the attorneys' representation."

---

[3] There are several minor discrepancies between the Gurrieri Letter and the Time Sheet itself. The Gurrieri Letter represents that the Time Sheet "shows 18.5 total hours spent in this case," (Gurrieri Letter 5), but the Time Sheet in fact only shows 15.2 total hours spent on the case, (Time Sheet). Additionally, the Gurrieri Letter represents that "Zellner spent 6.5 hours in this case, and . . . Gurrieri spent 8.7," (Gurrieri Letter 5), whereas the Time Sheet shows that Zellner spent 6.2 hours in this case and Gurrieri spent 9, (Time Sheet). As a result, the Time Sheet shows a total lodestar of $5,180, rather than the $5,210 indicated in the Gurrieri Letter. (*Compare* Time Sheet *with* Gurrieri Letter 5.) The Court will assume that Plaintiffs' counsel simply made arithmetic errors in writing the Gurrieri Letter and will rely on the Time Sheet.

*Velazquez Cuautle v. Hudson Market 303 LLC*, No. 18-CV-2968, 2019 WL 5569603, at *2 (S.D.N.Y. Oct. 29, 2019) (citing *McDaniel v. County of Schenectady*, 595 F.3d 422, 423 (2d Cir. 2010)).  This case was incredibly circumscribed in nature: though it was brought as a putative class action, it settled as an individual action involving two Plaintiffs only three months after it was filed, before even the initial conference took place, let alone discovery, motion practice, or certification.  (*See* Dkt.)  Moreover, Plaintiffs' counsel spent only 15.2 hours working on the case in total, a significant portion of which was devoted to settlement efforts.  (*See* Time Sheet.) Nonetheless, the Court finds that a modest multiplier of 1.59 is reasonable to account for the risk inherent in bringing any FLSA action on contingency.  *See Robles*, 2021 WL 4974677, at *2 (approving lodestar multiplier of 1.52, and noting that "[c]ourts in this district routinely approve lodestar multiplier above 1.5" (collecting cases)); *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17-CV-3302, 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019) ("Courts in this District have concluded that 'a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.'" (quoting *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015))); *cf. Velazquez Cuautle*, 2019 WL 5569603, at *2 (reducing multiplier from 2.6 to 2, explaining that "[the] [p]lainitffs' counsel provided no reason for why a multiplier on the higher end of the typical range for FLSA cases is appropriate in this particular case, which was not complex and did not involve any motion practice or depositions"); *Hernandez v. Boucherie LLC*, No. 18-CV-7887, 2019 WL 3765750, at *7 (S.D.N.Y. Aug. 8, 2019) ("This was straightforward FLSA litigation that was neither large nor complex.  This case, like many FLSA cases, involves virtually no risk to the [p]laintiff's attorney, assuming a reasonable job is done at the intake stage, but there, of course, is some risk

inherent in any case accepted on a contingency basis. . . . [T]he [c]ourt believes a multiplier of 1.3 is more than sufficient for these purposes.").

Accordingly, the Court concludes that the proposed attorneys' fees are reasonable as a fair percentage of the net award.

### III.  Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is denied without prejudice.  The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

SO ORDERED.

Dated:   December 27, 2021
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

14