UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIONEL BRIGGS *and* JAMES ANTWINE,
individually and in behalf of all other persons
similarly situated,

                              Plaintiffs,

        v.

DPV TRANSPORTATION, INC., DPV
TRANSPORTATION WORDLWIDE LLC,
DANIEL PEREZ, *and* JOSE PEREZ, jointly
and severally,

                              Defendants.

No. 21-CV-6738 (KMK)

OPINION & ORDER

Appearances:

John Gurrieri, Esq.
Law Office of Justin A. Zeller
New York, NY
*Counsel for Plaintiffs*

Scott Matthews, Esq.
Windels, Marx, Lane & Mittendorf, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Lionel Briggs ("Briggs") and James Antwine ("Antwine"; together, "Plaintiffs"), brought

this putative class action against their former employer, DPV Transportation, Inc. and DPV

Transportation Worldwide LLC (together "DPV"), and two managers of DPV, Daniel Perez and

Jose Perez (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. §§ 201, et seq.; the New York Minimum Wage Act, N.Y. LAB. LAW

§§ 650, et seq.; Section 191 of the New York Labor Law ("NYLL"), N.Y. LAB. LAW § 191; and

the New York Wage Theft Prevention Act, N.Y. LAB. LAW §§ 195, 198. (*See generally* Compl. (Dkt. No. 1).)  Plaintiffs—with Defendants' consent—originally sought approval of the Parties' proposed settlement on November 8, 2021. (*See* Letter from John M. Gurrieri, Esq., to Court (Nov. 8, 2021) (Dkt. No. 24).)  On December 27, 2021, the Court denied the proposed settlement without prejudice.  (*See* Op. & Order (Dkt. No. 25).)  Plaintiffs—again with Defendants' consent—have now submitted a revised proposed settlement addressing the Court's concerns. (*See* Letter from John M. Gurrieri, Esq., to Court (Jan. 28, 2022) ("Revised Gurrieri Letter") (Dkt. No. 26).)  For the reasons that follow, Plaintiffs' application is approved.

## I.  Discussion

The Court will not restate the facts of the case or the relevant standards of review here, (*see, e.g.*, Op. & Order 2–5), but instead will address how Plaintiffs have satisfied the Court's previous concerns.

### A.  Settlement Amount

The Court noted that it did not have sufficient information to determine whether the settlement sum was fair and reasonable. (*See id.* at 6–7.)  Plaintiffs have now furnished additional information regarding the revised proposed settlement agreement (the "Revised Settlement Agreement").  (*See* Revised Gurrieri Letter Ex. 2 (Settlement Agreement and Limited Release) ("Revised Settlement Agreement") (Dkt. No. 26-2).)  Under the Revised Settlement Agreement, Defendants agree to pay a total of $26,000 (the "Settlement Amount") to resolve Plaintiffs' claims.  (*See id.* ¶ 1.)  Of the Settlement Amount, $8,512.64 will be paid to Antwine, $8,371.36 will be paid to Briggs, and $9,116.00 will be paid to Plaintiffs' counsel for fees and costs.  (*See id.*)

Plaintiffs now explain that Antwine worked for Defendants between May 17, 2021 and July 11, 2021, during which time he worked a total of 569.25 hours at a rate of $25 per hour, with no overtime pay. (*See* Revised Gurrieri Letter Ex. 1 (Unpaid Wages Calculations) ("Calculations") (Dkt. No. 26-1); *see also* Revised Gurrieri Letter 2.) Plaintiffs calculate that during that eight-week period, Antwine should have been paid overtime wages for 249.25 hours, for a total of $3,115.63 in additional wages. (*See* Calculations; *see also* Revised Gurrieri Letter 1–2.) Further, Plaintiffs claim that Antwine is entitled to 100% of that amount as liquidated damages. (*See* Calculations; *see also* Revised Gurrieri Letter 1–2.)

Plaintiffs also explain that Briggs worked for Defendants between May 17, 2021 and July 11, 2021, during which time he worked a total of 516.5 hours at a rate of $25 per hour, with no overtime pay. (*See* Calculations; *see also* Revised Gurrieri Letter 2.) Plaintiffs calculate that during that eight-week period, Briggs should have been paid overtime wages for 236.5 hours, for a total of $2,956.25 in additional wages. (*See* Calculations; *see also* Revised Gurrieri Letter 1–2.) Further, Plaintiffs claim that Briggs is also entitled to 100% of that amount as liquidated damages. (*See* Calculations; *see also* Revised Gurrieri Letter 1–2.)

In addition to overtime wages and liquidated damages, Plaintiffs explain that they are owed $50 per workday that Defendants failed to furnish them with a notice and acknowledgement under New York Labor Law § 195(1) and $250 per workday (up to the statutory maximum of $5,000) that Defendants filed to provide them with accurate weekly wage statements under New York Labor Law § 195(3). (*See* Revised Gurrieri Letter 2.) Plaintiffs represent that Antwine worked 39 days for Defendants and Briggs worked 41 days; as such, Plaintiffs calculate that Antwine is owed $1,950 for failure to provide a notice and acknowledgement and $5,000 for failure to provide wage statements and Briggs is owed $2,050

3

for failure to provide a notice and acknowledgement and $5,000 for failure to provide wage statements.  (*See id.*)

Based on the above, Plaintiffs represent that Antwine is owed a total of $13,181.25 and Briggs is owed a total of $12,962.50.  (*See id.*)  Assuming Plaintiffs were awarded the full amount to which they represent they are owed at a joint trial—$26,143.75—Antwine would thus be entitled to 50.42% of the award and Briggs would be entitled to 49.58%.  (*See id.*)  As such, to arrive at Antwine and Briggs's respective settlement amounts, Plaintiffs simply applied these percentages to the portion of the negotiated Settlement Amount that remained after deducting attorneys' fees and costs.  (*See id.*)

This detailed explanation is sufficient to convince the Court that the Settlement Amount is fair and reasonable.  The amounts that Antwine and Briggs will recover under the terms of the Revised Settlement Agreement represent approximately 65% of Plaintiffs' estimations of their potential recoveries.  Thus, the Settlement Amount is clearly a "substantial proportion of the maximum possible recovery," *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (citation omitted); indeed, the Settlement Amount is a considerably larger proportion than those which other courts have found fair and reasonable, *cf. id.* (finding a proposed settlement amount of approximately 31% of the plaintiffs' calculation of the total potential recovery to be fair and reasonable); *Beckert v. Ronirubinov,* No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding a proposed settlement sum of approximately 26% of the estimated maximum possible recovery to be fair and reasonable).  Moreover, the Parties have represented that bona fide disputes exist over every basis on which Plaintiffs claim they are entitled to damages.  (*See* Revised Gurrieri Letter 2–3 (explaining that "Defendants contend that [P]laintiffs are not entitled to any additional overtime premium and are

4

also not entitled to liquidated damages or statutory damages pursuant to the Wage Theft

Prevention Act").)  These disputes certainly militate in favor of approval, as settlement avoids

the expense, burden, and risk associated with going to trial.  *See Rodriguez-Hernandez v. K.*

*Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving

settlement sum representing 26% of potential damages where there were "various bona fide

disputes between the parties" (underline and quotation marks omitted)); *Beckert*, 2015 WL

8773460, at *2 (approving settlement sum representing 26% of potential damages, recognizing

that the plaintiff "could well receive, post-trial, much less than this maximum possible

recovery").

 In sum, Plaintiffs have now provided the Court with the information necessary to conduct

the "information intensive undertaking" of examining whether a proposed FLSA settlement is

fair and reasonable, *Camacho v. Ess-A-Bagel, Inc*., No. 14-CV-2592, 2014 WL 6985633, at *2

(S.D.N.Y. Dec. 11, 2014), and the Court finds that the Settlement Amount merits approval.

 B.  Release Provision

 The Court also noted that the release provision in the Parties' original proposed

settlement agreement was overly broad.  (*See* Op. & Order 8–10.)  The Parties have amended the

language in the Revised Settlement Agreement by limiting the waiver to claims "relating only to

or arising out of the claims at issue in this Action."  (*See* Revised Settlement Agreement ¶ 4.)

The Court finds that this revised language satisfies the requirement that "any release provision

must be limited to the claims at issue in th[e] action."  *Lazaro-Garcia v. Sengupta Food Servs.*,

No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015); *see also Ramos v. DNC*

*Food Serv. Corp.,* No. 19-CV-2967, 2021 WL 5280954, at *2 (S.D.N.Y. Nov. 12, 2021) ("[A]

number of judges in this District refuse to approve any FLSA settlement unless the release

provisions are limited to the claims at issue in this action." (quoting *Cionca v. Interactive Realty, LLC,* No. 15-CV-5123, 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016))).  Because the release is now limited to the conduct at issue in this matter, the Court is satisfied that the release is no longer overbroad.

C.  Attorneys' Fees

While the Court previously found that the proposed attorneys' fees were reasonable as a fair percentage of the net award, (*see* Op. & Order 10–14), the proposed attorneys' fees in the Revised Settlement Agreement merit brief mention again here because Plaintiffs' substantiation for their proposed attorneys' fees has slightly changed.

As before, Plaintiffs' counsel seeks an award of $9,116, which amounts to approximately one-third of the settlement plus $536 in costs.  (*See* Revised Settlement Agreement ¶ 1; Revised Gurrieri Letter 1; *see also* Revised Gurrieri Letter Ex. 3 (Time Sheet) ("Time Sheet") (Dkt. No. 26-3); Revised Gurrieri Letter Ex. 4 (Case Costs) ("Costs Sheet") (Dkt. No. 26-4).)  And, again as before, Plaintiffs' counsel has submitted records of their time to substantiate their attorneys' fees request, (*see* Time Sheet), which Plaintiffs' counsel represents are contemporaneous, (*see* Revised Gurrieri Letter 6).  The difference in Plaintiffs' instant submission is that Plaintiffs' counsel has now spent an additional 2.3 hours working on this Action to revise their submission to this Court.  (*See* Time Sheet.)  Because Plaintiffs' counsel does not seek a larger attorneys' fee award to account for this additional time, the additional time has the effect of reducing Plaintiffs' counsel's requested lodestar multiplier from 1.59, (*see* Op. & Order 12), to 1.42.[1]

_____

[1] Plaintiffs' counsel represents that their requested lodestar multiplier is 1.59.  However, this figure does not correspond with the Time Sheet Plaintiffs' counsel submitted, nor does the Time Sheet correspond with the figures represented in the Revised Gurrieri Letter.  Plaintiffs

Given that the Court already found that a multiplier of 1.59 was reasonable to account for the risk inherent in bringing any FLSA action on contingency, (*see* Op. & Order 12–14), the Court finds here that the even more modest multiplier of 1.42 is also reasonable, even generous. *See Robles v. Luis Furniture No. 1 Inc.*, No. 20-CV-6951, 2021 WL 4974677, at *2 (S.D.N.Y. Oct. 26, 2021) (approving a lodestar multiplier of 1.52, and noting that "[c]ourts in this district routinely approve lodestar multipliers above 1.5" (collecting cases)); *Lazo v. Kim's Nail at York Ave., Inc.,* No. 17-CV-3302, 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019) ("Courts in this District have concluded that 'a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.'" (quoting *Lizondro-Garcia v. Kefi LLC,* No. 12-CV-1906, 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015))); *Hernandez v. Boucherie LLC,* No. 18-CV-7887, 2019 WL 3765750, at *7 (S.D.N.Y. Aug. 8, 2019) ("This was straightforward FLSA litigation that was neither large nor complex. This case, like many FLSA cases, involves virtually no risk to the [p]laintiff's attorney, assuming a reasonable job is done at the intake stage, but there, of course, is some risk inherent in any case accepted on a contingency basis. . . . [T]he [c]ourt believes a multiplier of 1.3 is more than sufficient for these purposes.").

Accordingly, the Court concludes that the proposed attorneys' fees continue to be reasonable as a fair percentage of the net award.

---

represent in the Revised Gurrieri Letter that Zeller spent 6.5 hours on this case and Gurrieri spent 11 hours, which corresponds with a lodestar of $5,900, (*see* Revised Gurrieri Letter 6), after applying Zeller and Gurrieri's reasonable hourly rates, (*see* Op. & Order 12). However, the Time Sheet demonstrates that Zeller spent 6.2 hours on this case and Gurrieri spent 11.3 hours, (*see* Time Sheet), which corresponds with a lodestar of $5,870. The total fees lodestar plus $536 in costs thus comes to a total of $6,406. As such, the total attorneys' fees and costs award requested by Plaintiffs' counsel incorporates a multiplier of approximately 1.42, not 1.59.

## II.  Conclusion

For the foregoing reasons, Plaintiffs' request for approval of the Parties' Revised

Settlement Agreement is granted.

SO ORDERED.

Dated:   February 23, 2022
         White Plains, New York

 

_____
KENNETH M. KARAS
United States District Judge